# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF ALABAMA

**CLYDE BERNARD FRANKLIN,**
**Individually and on Behalf of**
**Similarly Situated Individuals**

                                              **DOCKET NUMBER: 09-704**

**VERSUS**

**APPLE, INC. and**
**AT&T MOBILITY , L.L.C.**

**FILED: _____**          **DY. CLERK: _____**

### CLASS ACTION COMPLAINT
### JURY DEMAND REQUESTED

      **NOW INTO COURT**, through undersigned counsel, comes Plaintiff, CLYDE

BERNARD FRANKLIN, individually and on behalf of similarly situated individuals in

Alabama (hereinafter "plaintiffs" and/or "class representatives"), being of the full age of

majority, domiciled in the County of Mobile, State of Alabama, who does file this claim

individually and as representative of all others similarly situated in Alabama, respectfully

allege as follows:

**1.**

      Class Representative herein is:

      (a)    CLYDE BERNARD FRANKLIN, a person of the full age of majority and

               a resident of Mobile, Alabama.

1

**2.**

Made defendant herein is APPLE, INC. (hereinafter "Apple"), a California corporation with its principal place of business in Cupertino, California and doing business within the State of Alabama and the jurisdiction of this Honorable Court.

**3.**

Made defendant herein is AT&T MOBILITY, L.L.C. (hereinafter "AT&T"), a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia, authorized to do and doing business within the State of Alabama and the jurisdiction of this Honorable Court.

**JURISDICTION**

**4.**

This Honorable Court is vested with jurisdiction by virtue of 28 U.S.C. §1332. Plaintiffs are domiciliaries of the State of Alabama, and defendants are domiciliaries of a state other than the State of Alabama. This putative class action is brought by plaintiffs and/or class representatives, each of whom is domiciled within the State of Alabama. Further, the amount in controversy is in excess of $5,000,000.00.

**VENUE**

**5.**

Plaintiffs allege that the cause of action forming the basis of this claim occurred within the Southern District of Alabama, such that venue in this Honorable Court is proper.

## FACTS

**6.**

In January 2007, the iPhone was launched.  The iPhone was manufactured and created by Defendant-Apple.  The iPhone is a combination of an iPod (which stores thousands of music files and plays them back for the listener), a cellular phone (which allows users to talk on the telephone while mobile) with an incredible amount of creative functionality, and a personal digital assistant.  The cellular phone portion of the iPhone works exclusively with the AT&T cellular phone network.  Defendants, Apple and AT&T, launched the iPhone pursuant to an exclusive arrangement.  Both AT&T and Apple sold the iPhone in their respective stores.

**7.**

The original version of the iPhone was called the "2G".  The next generation, launched in July 2008, was called the "3G".  The most recent version, launched in June 2009, is called the "3G-S".

**8.**

Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service" ("MMS"), which, among other things, allows users to send a picture to another user's cellular phone.  Like most of the smartphone market at the time of their release, the original iPhone and the iPhone 3G lacked the MMS function. By the time Apple announced it was planning on launching the 3G-S, however, MMS was widely available on other smartphones, even other smartphones that used the AT&T network.

**9.**

Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow the MMS function.  Apple's print and video advertisements in and on television, the Internet, the radio, newspapers, and direct mailers, all touted the availability of MMS on new iPhones..

**10.**

Similarly, AT&T advertised that the 3G and 3G-S would allow MMS.  The MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S.

**11.**

MMS has been available on other types of cellular phones and is now standard.

**12.**

From Apple's website, MMS is discussed:

*Send MMS*
*Take a photo or shoot some video, then send it via Messages.  You can*
*also send audio recordings from within Messages, information from*
*Contacts, and directions from Maps.*

**13.**

A Pop-Up window on Apple's website reads:

*Sending Photos and Videos*
*You can take a photo or make a video (iPhone 3GS only) from within*
*Messages and include it in your conversation with another MMS-*
*capable device.*

4

**14.**

From AT&T's website:

*Messages*
*Use messages to send text, photos, audio, video, and more.  Forward a*
*whole message or just the important parts.*

**15.**

After the 3G iPhone came out in July 2008, customers who purchased the 3G

iPhone began to realize that MMS was not available.

**16.**

In response, AT&T published this in the AT&T Answer Center page of their

website for problems related to MMS:

*Customers who are sent a MMS message and own a non-MMS capable device*
*will receive a text message instead of an actual MMS message.  The message*
*will contain the website address of www.viewmymessage.com/1 or*
*www.viewmymessage.com/2 as well as a user name and password.  To view the*
*MMS message, please access the website from a computer and enter the user*
*name and password provided in the text message.*

**17.**

Incredibly, AT&T was directing customers interested in MMS *to go to a*

*computer* to view the message.

**18.**

The AT&T Answer Center has this unhelpful solution for the problem:

 *"Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message*
*(MMS) with iPhone:"*

*Goal: Send, Receive, or Delete a Picture, Audio or Video Multi-media Message*
*with iPhone*

*Symptom: Unable to Send, Receive, or Delete a Picture, Audio, or Video Multimedia Message with iPhone*

*Fix:  iPhone does  not support sending, or receiving picture, audio, or video multimedia messages.  If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.*

The "Fix" was essentially to say "tough luck".

**19.**

In early 2009, sales representatives for both Apple and AT&T began assuring customers that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the new iPhone OS Software Update would become available. Representatives in Apple and AT&T stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

**20.**

In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of 3G-S.  AT&T lowered the price of a 3G to less than $100.00 and assured customers that the new 3.0 Software Upgrade would solve all their problems.

**21.**

Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info.  Even tap to snap a picture right inside Messages".  A graphic showed the familiar iPhone test message bubbles with a picture inserted.

**22.**

Millions of customers, including Alabama residents, purchased the 3G and 3G-S,

waiting for the day in June 2009 when the new application would be available, which

would allow MMS.  Unfortunately, after downloading the new OS 3.0 Software Update

application, MMS still did not work on either the 3G or 3G-S.

**23.**

The Apple troubleshooting page explained the MMS problem:

*To send and receive MMS messages on your iPhone 3G, do the following:*

*1.     Verify that your iPhone and wireless carrier meet the system
requirements.  To use MMS you need:*

> *--     iPhone OS 3.0 installed on iPhone 3G.  The original iPhone does
> not support sending or receiving MMS messages.  Install iPhone
> OS 3.0 if necessary.*

> *--     A wireless carrier that supports MMS.*

> *--     A coverage area in which you can place and receive a call, and
> access the Internet using Safari on your iPhone (3G network
> coverage recommended).*

*2.     If <u>this article</u> shows that your carrier supports MMS, you should see
MMS Messaging in the Settings>Messages>General screen as shown
below.*

**24.**

The "this article" phrase was a blue-colored hyperlink.  Clicking on that hyperlink

leads to a page showing several countries.  Clicking on North America, and viewing the

graph for USA, under the heading "AT&T" it shows that AT&T is NOT a carrier which

offers MMS!  Of course, AT&T is the ONLY carrier in the United States used by the

iPhone.  In other words, AT&T's towers do not support MMS.

7

**25.**

Prior to September 25, 2009, Apple Customer Support revealed that AT&T had never upgraded its towers so as to support the functionality necessary for MMS. Therefore, the iPhone could not offer MMS, as claimed.

**26.**

The only excuse offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which read, "*MMS Support from AT&T coming in late summer*".

**27.**

None of the representatives in either the Apple or AT&T stores advised consumers that the MMS functionality of the phones will only work after the AT&T towers are upgraded to support MMS in "late summer".

**28.**

AT&T then claimed that MMS would be available by September 25, 2009, many months after the launch of OS 3.0 and 3G-S.

**29.**

On September 25, 2009, after several delays, the defendants allegedly activated MMS for iPhone 3G and 3GS users in the United States, bringing to an end months of speculation and waiting, since software support for the feature was introduced in iPhone OS 3.0 in mid-June, 2009.

**30.**

Apple, acting for defendants, posted a support article outlining the process for

activating MMS.  This detailed MMS activation involves updating a carrier settings file on users' iPhones via iTunes. Users are then prompted to connect their iPhone to iTunes and click the "Check for Update" button.  Users are urged at this site to update to iPhone OS 3.1 if they have not already done so, and then click the "Update Settings" button on the pop-up window notifying them that a new carrier settings file is available.

The support article is found at http://support.apple.com/kb/HT3880.

According to the support article, the software changed from OS 3.0 to OS 3.1, whereby a computer is a requirement in order to activate MMS for the latest OS 3.1.

Assuming an iPhone owner can navigate this activation successfully and assuming the iPhone owner has the requisite complex computer skills, that iPhone owner will finally be able to MMS after months and months of delay and frustration.

**31.**

Results with MMS activation have been mixed since September 25, 2009.

**32.**

If all problems are resolved, the millions of iPhone purchasers will get what they bargained for in terms of MMS.  But in the meantime, all the millions of purchasers of the 3G and the 3G-S iPhone have been deceived and cheated out of what they thought they were purchasing -- a phone with MMS functionality.

**33.**

Apple and AT&T representatives continue to misrepresent and/or conceal, suppress, or omit material facts to customers in their stores about the MMS functionality for the 3G and 3G-S iPhones.

9

## NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

**34.**

Clyde Bernard Franklin went into an Apple store in September 2008 and was interested in a phone with MMS functionality.

**35.**

The store representative misrepresented and/or concealed, suppressed, or omitted material facts as to the iPhone having MMS functionality.

**36.**

Plaintiff purchased the iPhone primarily for personal, family, or household purposes.

**37.**

When the OS 3.0 Software Upgrade became available, Mr. Franklin downloaded it for the iPhone 3G.

**38.**

Despite the OS 3.0 software download, MMS still did not work.

**39.**

Named Plaintiff learned that AT&T had not upgraded its towers but would do so for a September 25, 2009 launch.  Mr. Franklin then downloaded OS 3.1, after the September 25, 2009 Apple support article.  For the first time, MMS appears to be working.

**40.**

It is clear that AT&T has declining ability to manage functioning of the iPhones owing to the foreseeable and well known limitations of AT&T with the iPhone and issues with towers. The CEO of AT&T has indicated that things are going to get worse before they get better. Even with the new towers, the capacity would not be adequate. The iPhone may be simply too much for AT&T. Calls and messages will likely be lost. Some functionalities may never commence to work.

**41.**

Plaintiffs have been damaged in that for many months they have been unable to send, or were delayed in sending, MMS messages.

## CLASS ALLEGATIONS

**42.**

Named Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of all residents or individuals of Alabama on behalf of him and thousands of other iPhone 3G and 3G-S purchasers from Apple and AT&T who are similarly situated to plaintiffs and who reside in the State of Alabama. The class is defined as follows:

## CLASS DEFINITION

*All residents of Alabama who, between July 1, 2008 and the date of final judgment or settlement, have purchased a 3G or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc. for personal, family, or household use.*

**43.**

The class is so numerous that joinder of all issues is impracticable. The class is so numerous that joinder of all members is impractical. Published news reports stated that over a million customers purchased the 3G iPhone the day it became available. Many of those customers are located in Alabama. It is estimated that the Class will be composed of at least 10,000 individuals. Plaintiffs will be claiming damages for the 3G or 3G-S iPhone they purchased. A 3G iPhone was selling from anywhere between $100.00 and $500.00. Additionally, no attorney would have the financial resources to litigate this case against opposition from the Defendants when the potential for recovery is so small for each class member. Therefore, joinder of all similarly situated plaintiffs is appropriate.

**44.**

The claims asserted by Plaintiffs on behalf of themselves and all similarly situated Class members present questions of fact or law common to the class, including, *inter alia*, whether Defendants engaged in deceptions and concealments in making claims that MMS was available on the 3G and 3G-S. Questions of law and fact common to the members of the class predominate over questions affecting individual members. Those common questions of law and fact include:

**Fact Questions:**

      (a)    Did the Defendants know that AT&T had not upgraded its towers to support MMS and, if so, when did they gain this knowledge;

(b)    Did the Defendants know that most customers viewed MMS an

important functionality;

(c)    Did the Defendants conceal from consumers that:

(1)    AT&T had not upgraded its towers to support MMS and

had no plans to do so for many months; and

(2)    the OS 3.0 Software Upgrade would not fix the problem

and make MMS available;

(d)    Was Defendant aware of alternative methods of disclosure which

would have more adequately warned customers of the

unavailability of MMS and the reason for the non-availability of

MMS;

(e)    Did the Defendants market and advertise their 3G and 3G-S

iPhones as supporting MMS with no mention, or little mention, of

the fact that AT&T towers were not equipped to support MMS;

(f)    Do the salespersons at Apple and AT&T have any scripts or

training materials which would provide them with knowledge or

information as to the fact that AT&T towers do not support MMS,

or any advice as to when the towers will support MMS;

(g)    According to Apple's and AT&T's marketing research, is MMS

functionality an important decision driver for personal, family or

household consumers when buying iPhones;

13

(h)      When AT&T finishes its towers upgrade, will it be sufficient to accommodate the MMS function;

(i)      Did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading or deceptive to consumers;

(j)      Did AT&T or Apple receive complaints from consumers (directly or through the Better Business Bureau or any State Attorney General's office) about the lack of MMS functionality, and what was their response;

(k)      What did Defendants tell their own managers and employees internally about the MMS functionality;

(l)      Were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

(m)      Why did Apple and AT&T not tell customers the truth about MMS when the customer is buying the product in the store; and

(n)      Other fact questions.

**Legal Questions:**

(a)      Did the Defendants engage in an unfair practice in connection with the sale or advertisement of goods and services when they represented to Alabama consumers that their iPhones would have the MMS functionality;

(b)     Did the Defendants employ any deception, fraud, false pretense, false promise, unjust enrichment, or misrepresentation, in connection with the sale or advertisement of goods or services under the ADTP Act when they represented to Alabama consumers that their iPhone would have the MMS functionality;

(c)     Did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of goods or services under the ADTP Act when they represented to Alabama consumers that the OS 3.0 Software or OS 3.1 software Upgrade would allow their iPhones to have the MMS functionality;

(d)     Did the Defendants conceal, suppress, or omit material facts when they failed to reveal to consumers that:

    (1)     the towers of AT&T, the exclusive phone network for the Phone, did not support the MMS functionality;

    (2)     AT&T would not have the towers upgraded for many months (and that such towers may prove inadequate for the future); and

    (3)     the OS 3.0 or OS 3.1 Software Upgrade would not, by itself, solve the problem;

(e)     To what extent and in what amount were Plaintiffs and the Class damaged by Defendants' unlawful actions?

(f)    Do the Defendants have affirmative defenses which are common to

all class members? and

(g)    Other legal questions.

**45.**

The claims asserted by Plaintiffs on behalf of themselves are typical of the other

Class members' claims in that the other Class members also received similar

representations about the MMS functionality.

**46.**

Plaintiffs will fairly and adequately represent and protect the interests of the Class

because:

(a)    Plaintiffs have retained counsel experienced in the prosecution of class

action litigation and counsel will adequately represent the interests of the

Class;

(b)    Plaintiffs and their counsel are aware of no conflicts of interest between

plaintiffs and absent Class members or otherwise;

(c)    Plaintiffs have, or can acquire, adequate financial resources to assure that

the interests of the Class will not be harmed; and

(d)    Plaintiffs are knowledgeable concerning the subject matter of this action

and will assist counsel in the prosecution of this litigation.

**47.**

A class action provides a fair and efficient method for adjudicating this

controversy and is superior to the other available methods of adjudication in that:

(a) Neither the size of the class, nor any other factor, makes it likely that difficulties will be encountered in the management of this class as a class action;

(b) The prosecution of separate actions by individual class members, or the individual joinders of all Class members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each member of the Class;

(c) Because of the disparity of resources available to defendants versus those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; and

(d) The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each member of the Class and meets all due process requirements as to fairness to all parties. A class action is also superior to maintenance of these claims on a claim by claim basis when all actions arise of the same circumstances and course of conduct.

## COUNT I

### 48.

**Alabama Deceptive Trade Practices Act, Code of Alabama §8-19-1, *et seq.*
("ADTP Act")**

Plaintiffs reincorporate and reallege Paragraphs 1 through 47, as if more fully set forth herein.

**49.**

Plaintiff brings claims against the Defendants under the ADTP Act.

**50.**

Plaintiffs allege that the Defendants performed unlawful, deceptive acts or practices in the conduct of trade or commerce, as follows:

(a)    representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they did not have or that they had sponsorship, approval, status, affiliation, or connection that they did not have;

(b)    disparaging the goods, services, or business of another by false or misleading representation of fact;

(c)    advertising goods or services with intent not to sell them as advertised;

(d)    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

**51.**

In the event Plaintiffs are the prevailing party, Plaintiffs also seek a reasonable attorney's fee and costs, as provided under the ADTP Act.

## COUNT II

**52.**

### Fraud

Plaintiffs reincorporate and reallege Paragraphs 1 through 51 as if more fully set forth herein.

19

**53.**

Plaintiffs bring claims against the Defendants for misrepresentations of a material fact made willfully to deceive, pursuant to the Code of Alabama §6-5-101.

**54.**

Plaintiffs bring claims against the Defendants due to their consciously and deliberately engaging in fraud, wantonness, and malice with regard to the Plaintiffs, pursuant to the Code of Alabama §6-11-20(a).

**55.**

Defendants intentionally misrepresented, deceived, and concealed material facts that they had a duty to disclose, which was gross, oppressive, and malicious and committed with the intention on the part of the Defendants to deprive the Plaintiffs of property or legal rights, causing damages to the Plaintiffs, pursuant to the Code of Alabama §6-11-20(b)(1).

**56.**

Defendants acted with malice by intentionally doing a wrongful act without just cause or excuse, with an intent to injure Plaintiffs' person or property, pursuant to the Code of Alabama §6-11-20(b)(2).

**57.**

Defendants employed, in connection with the sale and advertisement of 3G and 3G-S iPhones, to Alabama consumers, deception, fraud, false pretense, false promise, misrepresentation, and unfair practices, including but not limited to

representing that the phones would support MMS when Defendants knew, in fact, that they would not support MMS.

**58.**

**Tort**

Plaintiffs reincorporate and reallege Paragraphs 1 through 57, as if more fully set forth herein.

**59.**

**Punitive/Treble Damages**

Defendants' conduct to Plaintiffs was wanton, reckless, and a conscious disregard for the Plaintiffs' rights, pursuant to Code of Alabama §6-11-20(b)(b)(3). Moreover, Defendants' actions were intentional and outrageous, without any justification or excuse, and warrant the imposition of punitive or treble damages sufficient to deter like conduct of these Defendants in the future.

**60.**

Defendants are responsible and jointly, severally, solitarily and vicariously liable to Plaintiffs for damages and their injuries and the entire judgment.

**61.**

Defendants misrepresented, concealed, suppressed, or omitted the following material facts in connection with the sale and advertisement of 3G and 3G-S iPhones to consumers in Alabama:

(a)     AT&T had not upgraded its towers to support MMS and, therefore,

MMS would be unavailable on iPhones until the towers were upgraded;

(b)    AT&T would not have the towers upgraded for many months; and

(c)    The 3.0 and 3.1 Software Upgrade would not, by itself, solve the

problem and make MMS available.

**62.**

As a direct result of the deceptions, frauds, false pretenses, misrepresentations,

unfair practices, concealments, suppressions, and omissions of Defendants, Plaintiffs

have suffered an ascertainable loss of money, namely the difference in value between

the iPhone, as represented, and the iPhone as it actually exists.

**63.**

**RELIEF SOUGHT**

Plaintiffs reincorporate and reallege Paragraphs 1 through 62, as if more fully

set forth herein.

**64.**

Plaintiffs and the proposed class members demand a trial by jury.

WHEREFORE, Plaintiffs, and all similarly situated individuals who do not opt

out of this action, demand:

(a)    an order, entered as soon as practicable, certifying this case as a class

action under Rule 23 of the Federal Rules of Civil Procedure.

(b)    an order directing that appropriate notice to class members be

delivered;

(c)    defendants be found jointly and severally liable for plaintiffs' damages and

the proximate cause of injuries to each claimant for the entire injury and

judgment.

(d)     compensatory damages for plaintiffs and the other Class members in an

        amount which is fair and reasonable to compensate them for their

        damages;

(e)     punitive or treble damages sufficient to deter like conduct of these

        Defendants in the future;

(f)     all damages in an amount which is fair and reasonable;

(g)     reasonable attorney's fees and costs;

(h)     all damages and relief proper under the ADTP Act;

(i)     trial by jury; and

(j)     such other relief as this Honorable Court deems just and proper.

                    Respectfully Submitted,

                    PENTON LAW FIRM (La. #10462)
                    209 HOPPEN PLACE
                    BOGALUSA, LOUISIANA  70427
                    PHONE        :        (985) 732-5651
                    TELECOPIER:           (985) 735-5579
                    E-MAIL       :        fedcourtmail@rgplaw.com

                    THE LAW OFFICES OF MAX C. MARX  (La. #09225)
                    301 NAPOLEON STREET
                    BATON ROUGE, LOUISIANA
                    PHONE        :        (225) 223-2499
                    E-MAIL       :        maxcolemanmarx@yahoo.com


                    s/Ronnie G. Penton
                    Ronnie G. Penton
                    Trial Counsel for Plaintiff
                    Louisiana Bar Roll Number 10462